UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 12-CR-20751-COOKE-TURNOFF

| | |
|---|---|
| UNITED STATES OF AMERICA, | : |
| | : |
| v. | : |
| | : |
| SILA LUIS, et al., | : |
| . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . | : |

**MOTION TO REVOKE ORDER OF PRETRIAL DETENTION [DE #37]**

Defendant SILA LUIS, through undersigned temporary counsel, respectfully moves the Court, pursuant to 18 U.S.C. § 3145(b), to revoke the order of pretrial detention. *See Detention Order – Risk of Flight* [DE #37]. Based on a review of the discovery (which was not available until after the detention hearing), defendant submits that, at the detention hearing, the government grossly exaggerated the strength of the government's case, the sentencing exposure and the corresponding risk of flight. For the reasons set forth below and in her *Motion to Authorize Subpoenas Duces Tecum for Medical Records* [DE #68], Ms. Luis submits that she should be admitted to bail, even if under home confinement.

**Background**

The prosecutor prominently characterized the case as one in which the defendant billed Medicare "to the tune of about $74,000,000 for those services that were principally medically unnecessary and/or not provided." Transcript of 10/16/12

[DE #52] at p. 5 (a highlighted copy was attached as Exhibit 5 [DE #68-5] to defendant's *Motion to Authorize Subpoenas Duces Tecum for Medical Records*). The prosecutor reiterated that

> [n]urses would then perform phony visits, not actually performing the services, but indicating that they were provided in order to bill the Medicare program. Ultimately LTC is paid thirty eight and a half million dollars for *that* billing and Professional is paid about $7,000,000 for *that* billing.

*Id.* at 5-6. The implication of the government's proffer was that all of the billings of LTC and Professional were for services not rendered (and not medically necessary). The government proffered that Ms. Luis is "facing a sentence of 30 years" under the guidelines based on a total offense level of 40 corresponding to "292 months to 365 months in prison." Transcript of 10/16/12 [DE #52] at p. 7, 32.

Magistrate Judge McAliley found that defendant Luis posed a risk of flight, based in part on the government's proffer regarding the strength of the case, the sentencing exposure, substantial assets and moneys not accounted for, and foreign connections:

> 2. Probable cause to believe the defendant committed these offenses was established by the Indictment as well as the proffer offered at the October 16 hearing by Joseph S. Beemsterboer, the Department of Justice trial attorney handling this case, and the testimony Special Agent Alberico Crespo of the Department of Health and Human Services, Office of the Inspector General.

3. In brief, the government proffered evidence that the defendant was an owner and operator of LTC Professional Consultants, Inc. ("LTC")and Professional Home Care Solutions, Inc. ("Professional Home Care"). LTC and Professional Home Care purported to provide home health and physical therapy services to Medicare beneficiaries, but in fact fraudulently billed Medicare for as much as approximately $74 million, of which $45 million was paid. Medical records were falsified to conceal the fraud, and kickbacks were paid to patients and patient recruiters. ***The weight of the evidence against the defendant supports pre-trial detention***.

4. If convicted, the defendant faces a ***lengthy prison sentence***, which the government suggests may be as long as ***30 years***, and the defense suggests would more likely be a 10 to 15 year sentence under the advisory Sentencing Guidelines. Either way, ***the possible sentence creates for the defendant a significant incentive to flee this jurisdiction before trial***.

5. The evidence offered by the government strongly suggests that the defendant has the means, opportunity, and sophistication to leave this jurisdiction. The defendant as well as her family members, including her daughter, Lisandra Luis, and husband, Wilfredo Luis, received ***extraordinary sums of money from Medicare*** during the period of allegedly fraudulent activity. ***Not all of that money has been accounted for by the government***. Considerable cash and travelers checks as well as diamonds and jewelry, were recovered from a safe at the defendant's residence. The defendant also has access to bank accounts and credit cards held or issued by ***foreign banks***. These and other assets, which were further detailed in the report of Pretrial Services at the pre-trial detention hearing, provide the defendant with substantial resources to flee.

6. The defendant also has ***significant foreign connections***, including multiple real properties in Mexico and family ties to Cuba. The defendant possess several passports issued by the United States and Cuba, and has made approximately 40 trips abroad since 2006.

    7.  Based on the above findings of fact, supported by a preponderance of the evidence, this Court has concluded that the defendant presents a risk of flight. The Court specifically finds that there are no conditions or combination of conditions which would reasonably assure the defendant's appearance as required by 18 U.S.C. § 3142(e).

*Detention Order – Risk of Flight* [DE #37] at p. 2.

After the detention hearing, the government began producing discovery, eventually granting undersigned access to the 750 boxes of records that were maintained by LTC and Professional until they were seized by the government pursuant to search warrants.[1] The government has not provided undersigned with an inventory of the 750 boxes. The government also produced bank records: account statements from the eight different banks for the accounts owned by LTC, Professional and Ms. Luis. The discovery contains copies of some, but not all, of the checks and deposit slips for those accounts.

As soon as the discovery was made available, defendant's daughter, Lisandra Guerrero (a licensed attorney) and defendant's son-in-law, Gustavo Guerrero (an accounting graduate, but not a CPA) traveled to the government's offices in Miramar to begin reviewing and creating an inventory of the 750 boxes. Both are familiar with the companies records having worked there during their school years. They have

---

[1] During the search and seizure, government agents removed the contents of the boxes and redistributed the contents in other boxes, complicating the review. The government has not yet provided undersigned with an inventory of the boxes.

already spent over 40 working hours each at the Miramar offices. Meanwhile, they are also reviewing the data on the duplicate copy of the computer server but are not yet able to access any data from the server for LTC, due to technical difficulties.[2]

With access to the discovery, including the records of LTC and Professional that the government had seized, Ms. Luis can disprove the allegations made at the detention hearing which led to the findings made by the Magistrate Judge.

### **Strength of the Government's Case**

The source of these accusations appears to be eight cooperating witnesses motivated to (falsely) incriminate Ms. Luis in their fraud and kickback scheme. But these cooperators comprise only a handful of the 400+ nurses / therapists / aides paid by LTC and Professional to provide services to Medicare patients. Of the 1900+ Medicare patients serviced by LTC and Professional, the accusations of kickbacks, unnecessary services and fraudulent billing made by the cooperators appear to relate to fewer than 200 patients.

With access to the discovery and the records sought by the pending *Motion to Authorize Subpoenas Duces Tecum for Medical Records* [DE #68], defendant Luis

---

[2] To date, we have not been able to access the LTC server. A computer technician retained by the defense has been diligently conferring with the government to resolve the problem, but the computer problem remains unresolved. Without access to the LTC server, undersigned has no practical way of identifying the names of patients, doctors, nurses, therapists aides and employees. LTC received approximately $39MM of the $45MM Medicare revenues at issue in this case.

can prove that for every patient, LTC and/or Professional maintained a file containing a signed "prescription" and "Plan of Care" approved by the treating doctor, who was not employed or paid by LTC and/or Professional. As most of the patients were diagnosed as diabetic, a majority the patient files of LTC and Professional would include the results of a "hemoglobin AlC test" performed by reputable, independent laboratories (Quest Diagnostics, Labcorp, Physician Laboratories Services, et al.) confirming the diagnosis of diabetes. Defendant Luis relied on those medical records when LTC and/or Professional billed for services. As an additional safeguard to insure compliance, LTC and Professional would send a representative (other than the billing nurse/therapist/aide) to conduct a "Survey," an unannounced supervisory visit during which he/she would travel to each patient's home and inquire about the quality of service being provided. A uniform report was completed during each visit, signed by the patient or patient's caregiver. (A sample of a "Survey" conducted by Gustavo Guerrero in 2006 is attached as Exhibit 3 [DE #68-3] to the *Motion to Authorize Subpoenas Duces Tecum for Medical Records*.)

Access to discovery thus far has allowed undersigned to obtain the names of employees who have personal knowledge as to the procedures outlined above. Undersigned is serving them with subpoenas to appear for the "Preliminary Injunction Hearing" scheduled for January 3, 2013 before Judge Huck. *Order Continuing*

*Hearing and Extending Temporary Restraining Order* [DE #54] in 12-23588-CV-HUCK.  Defendant proposes to call them as witnesses at a hearing on the instant motion, as well.

## **Sentencing Exposure**

Perhaps the abundance of exculpatory evidence regarding the accusation of bogus billing explains the government's more recent assertion, made in the parallel civil action before Judge Huck restraining her assets, that this is "primarily a kickback case," *Government Response to Motion to Continue* [DE #51] at 2, filed in Case No. 12-CV-23588-PCH.  But if this case is not about billing for bogus services but rather a kickback scheme, that would reduce to zero the calculation of "loss" under the Sentencing Guidelines.  *See United States v. Medina*, 485 F.3d 1291 (11th Cir. 2007) (no losses attributable to kickback scheme).  A defendant convicted in a pure kickback scheme would face a guideline base offense level of six, with no additional levels for loss.  *See, e.g., United States v. Guerra*, 307 Fed. Appx. 283, 287 (11th Cir. 2009) (unpublished opinion) (on appeal from the re-sentencing of Medina's co-defendant for money laundering and health care fraud based on kickbacks, the Eleventh Circuit held that "Guerra actually did not merit any additional levels from the § 2B1.1 loss table because she was not responsible for any loss to Medicare. *See Medina,* 485 F.3d at 1304-05; U.S.S.G. § 2B1.1(b)(1).").  The total offense level for

even the organizer/leader would not exceed level 12, *e.g., id.*, with a corresponding guideline range of 10-16 months, making her probation-eligible – a far cry from the prosecutor's proffer at the pretrial detention hearing of a total offense level of 40 corresponding to "292 months to 365 months in prison." Transcript of 10/16/12 [DE #52] at p. 7.  The risk of flight associated with a guideline range of 10-16 months does not warrant pretrial detention.

## **Substantial Assets and Moneys Not Accounted For**

With access to bank records, defendant can rebut the suggestion that the government has been unable to trace the money.  First of all, given that the bank records produced in discovery do not contain copies of all of the checks (disbursements), the government's tracing exercise was neither thorough nor complete.  Having failed to complete the task of tracing, the government shouldn't be heard to complain that "[n]ot all of that money has been accounted for by the government."  *Detention Order – Risk of Flight* [DE #37] at p. 3 / ¶5.

The available bank records (checks) reveal that an overwhelming majority of the Medicare revenues were *not* paid to Ms. Luis or her family members.  Of LTC's Medicare revenues, approximately $34MM was used to pay the 400+ nurses / therapists, aides, staffing agencies and employees, as well as the overhead (rent, utilities, office supplies, licensing fees, etc.).  Approximately $5.4MM was paid to

Ms. Luis and family members, **which they declared as income on their tax returns**. Those proceeds were used to acquire the assets that are the subject of the civil forfeiture action, including real estate, frozen bank accounts and personal property (e.g., jewelry) seized upon Ms. Luis's arrest. With additional bank records that should be made available in discovery, defendant can show that there has been no concealment of her wealth.

## Foreign Connections

Ms. Luis voluntarily disclosed to the court at the detention hearing that she owns investment (rental) properties in Mexico, which explains her frequent travel to Mexico. The government is also aware that Ms. Luis has money in bank accounts in Mexico, representing the rent proceeds from those investment properties. Ms. Luis has traveled to Cuba on an annual basis to visit her 84-year old mother, who resides in Cuba.

These "foreign connections" do not disqualify a Cuban-born, naturalized U.S. Citizen who has resided in Dade County for 15+ years from being released on bail, particularly given that her husband (of 20+ years), daughter (a licensed attorney) and son (airplane mechanic student) are all U.S. citizens, as well. Moreover, Ms. Luis proposes to waive any rights to contest extradition from Cuba or any other country.

## Standard of Review

When a defendant challenges the pretrial-detention order of a magistrate judge, the district court must conduct an independent review of the case to determine whether the magistrate judge correctly found that pretrial detention is necessary. *United States v. Hurtado,* 779 F.2d 1467, 1480 (11th Cir.1985). A district court reviews a magistrate judge's detention orders *de novo. United States v. King,* 849 F.2d 485, 489–90 (11th Cir.1988). The court may conduct an evidentiary hearing if it "determines that additional evidence is necessary or that factual issues remain unresolved" after reviewing the defendant's motion; or the court may rely on the pleadings and evidence considered by the magistrate judge to determine whether "the magistrate [judge]'s factual findings are supported and ... the magistrate [judge]'s legal conclusions are correct." *Id.* at 490. If the court decides that the submissions of the parties and the additional evidence presented at its own hearing does not affect the validity of the magistrate judge's factual findings and legal conclusions, the court may state its reasons for that decision and adopt the magistrate judge's detention order. *United States v. King,* 849 F.2d 485, 490–91 (11th Cir.1988).

## Relief Requested

Given the abundance of exculpatory evidence now accessible to the defendant by way of discovery, as well as the medical records that can be made available by

-10-

court subpoena, the court should consider this "additional evidence" because "factual issues remain unresolved." *See King,* 849 F.2d at 490.  Defendant asks that the court set a hearing date so that the defendant can present testimony and medical records (that are subject of the proposed subpoenas).

Ultimately, defendant submits she should be admitted to bail.    If released on bail, she would remain under home confinement with electronic monitoring at her home (address: 6055 SW 87 Avenue, Miami FL 33173), residing with her husband, son, daughter, son-in-law and daughter-in-law.  Her daughter, attorney Lisandra Guerrero, is prepared to serve as a third-party custodian, responsible for reporting any violation of the conditions of bond.  Ms. Guerrero understands that she would be at risk of being held in contempt of court (and losing her license to practice law) for not complying with court orders relative to her role as third-party custodian.

Ms. Luis proposes to post a high personal surety bond, collateralized by all of her real property and co-signed by her husband, daughter, son and other family members and friends.

Prosecutor Joseph Beemsterboer advised that the government will oppose this motion.

Respectfully submitted,

**BLACK, SREBNICK, KORNSPAN & STUMPF, P.A.**
201 South Biscayne Boulevard, Suite 1300
Miami, Florida 33131
Ph. (305) 371-6421 – Fax (305) 358-2006
E-mail HSrebnick@RoyBlack.com

By: /s/ Howard Srebnick
HOWARD SREBNICK, ESQ.
Florida Bar No. 919063
*Counsel for Sila Luis*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that the foregoing was electronically filed via CM/ECF on December 19, 2012.

/s/ Howard Srebnick
HOWARD SREBNICK, ESQ.